(86 Misc. Rep. 678)

SCHIEFFELIN v. KOMFORT et al.

(Supreme Court, Special Term, New York County. August 24, 1914.)

1. ELECTIONS (§ 236*) — CONSTITUTIONAL CONVENTION — DETERMINATION OF VOTE.
    Laws 1913, c. 819, providing for an election to determine whether a constitutional convention shall be held, by the provision that if the majority of the electors voting on such question shall be shown to have voted in the affirmative, "as shall appear from the return of the county board of canvassers and by its canvass of such returns," the convention shall be held, contemplates that the returns shall be true and in accord with the facts, and does not attempt to make the returns final and conclusive, no matter how erroneous they may in fact be, and so contravene Const. art. 14, § 2, making a vote of a majority in favor thereof a prerequisite to the holding of such a convention.
    [Ed. Note.—For other cases, see Elections, Dec. Dig. § 236.*]

2. ELECTIONS (§ 269*)—CONSTITUTIONAL LAW (§ 68*)—CONSTITUTIONAL CONVENTION—INJUNCTION—JURISDICTION.
    There being no remedy at law, it is within the equity jurisdiction of the Supreme Court to grant relief, if a majority in fact against the holding of

a constitutional convention is by fraud converted into a minority on the face of the election returns; this presenting a judicial and not a political question.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 245, 246; Dec. Dig. § 2C9;* Constitutional Law, Cent. Dig. §§ 125–127; Dec. Dig. § 68.*]

3. INJUNCTION (§ 114*)—CONSTITUTIONAL CONVENTION—SUIT BY TAXPAYER.

Suit to enjoin the nomination and election of delegates to a constitutional convention, there not having been the requisite vote in favor of holding the convention, not having been initiated by an officer, may be maintained by an elector and taxpayer.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

4. INJUNCTION (§ 110*)—STATE OFFICERS—DEPARTMENT OF SUPREME COURT.

Code Civ. Proc. § 605, providing that, where a duty is imposed by statute on a state officer or board of state officers, an injunction order to restrain him or them from performance of that duty shall not be granted, except in the department of the Supreme Court in which the officer or board is elected or the duty is required to be performed, is directory merely, as, if mandatory, it would contravene Const. art. 6, § 1, continuing the Supreme Court with general jurisdiction in law and equity, subject to appellate jurisdiction to the Court of Appeals; such jurisdiction extending throughout the state, and every justice of the Supreme Court having equal power with all other justices thereof.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 188–194; Dec. Dig. § 110.*]

5. TIME (§ 11*)—REGISTRATION OF VOTERS—COMPUTATION OF TIME.

Laws 1913, c. 819, providing for an election April 7, 1914, to determine whether a constitutional convention shall be held, and for the registration of the voters on March 28th preceding, from 8 a. m. till 10 p. m., satisfies Const. art. 2, § 4, requiring the registration to be "completed at least ten days before each election," though the election begins at sunrise; it being enough that, subtracting the day of registration from that of the election, ten days remain, fractions of a day being disregarded where the hour itself is not material.

[Ed. Note.—For other cases, see Time, Cent. Dig. § 53; Dec. Dig. § 11.*]

6. ELECTIONS (§ 295*)—CONCLUSIVENESS OF RETURNS.

Election returns are merely prima facie evidence of the votes cast, and where they are shown to be fraudulent or incorrect, and the fraud is general or the error substantial, they may be impeached, and they then lose all probative value, and the court is then required to determine by other legal evidence what the vote actually was.

[Ed. Note.—For other cases, see Elections, Cent Dig. §§ 297–299; Dec. Dig. § 295.*]

Action by William Jay Schieffelin against V. Komfort and others, constituting the Board of Elections and Custodians of Primary Records for Albany County, and others, for injunction. Motion for injunction denied.

Order affirmed, 163 App. Div. 741, 149 N. Y. Supp. 65, which is affirmed by Court of Appeals, 212 N. Y. 520, 106 N. E. 675.

Mansfield Ferry, of New York City (Louis Marshall and Albert S. Bard, both of New York City, of counsel), for plaintiff.

Ellwood M. Rabenold, Asst. Atty. Gen., for defendants.

SEABURY, J. This action is brought by the plaintiff as an elector and taxpayer of this state to restrain the boards of election and the

election officials of the state from taking steps preliminary to the nomination and election of delegates to the constitutional convention. Pursuant to section 2 of article 14 of the Constitution of the State, the Legislature enacted a law which provided for a special election to be held on the first Tuesday in April, 1914, and at which there should be submitted to the electors the question whether a convention could be held to revise and amend the Constitution of the state (chapter 819 of the Laws of 1913). Under the constitutional provision referred to above it is provided that the convention to amend and revise the Constitution of the state should be held only "in case a majority of the electors voting thereon shall decide in favor of a convention for such a purpose." The special election was duly held on April 7, 1914, and thereafter the state board of canvassers filed a statement of the votes cast, which statement showed that, out of 310,444 cast, 153,222 votes had been cast in favor of the proposition, while 152,969, or 1,253 less had been cast against it, and the state board of canvassers filed a determination that the proposition submitted to the electors of the state to hold a convention had been adopted.

The plaintiff makes two contentions upon which he bases his claim to injunctive relief: First, it is claimed that the statute under which the special election was held is unconstitutional and void; and, second, that the majority of the votes cast were opposed to the proposition that the convention should be held, and that the pretended majority appearing on the face of the election returns is fraudulent and contrary to the actual fact. The present motion is for an injunction pendente lite. This motion and the action itself presents for determination questions of the gravest character. The motion papers were finally submitted to the court for its consideration on August 20, 1914, and the urgency for a speedy decision necessitates a brief statement of the conclusions reached by the court. Perhaps the correctness of the conclusions reached could be made more manifest if time permitted a fuller discussion of the questions presented for decision, but I think their general correctness will be evident from the reasons assigned and the authorities cited. The court has also been actuated in making this prompt determination to facilitate the progress of the case to the appellate courts, in the hope that ample time might be afforded those tribunals to review this decision before the time that the acts sought to be enjoined must, under the statute, be completed.

[1] Before considering the case upon its merits, and discussing the constitutionality of the statute under which the special election was held, and the question as to whether a majority of the electors voting at such election voted for or against the proposition to hold a convention, there are several objections urged by the Attorney General of the state which present questions too important to be ignored, and as to which I am unwilling, even impliedly, to give assent. Thus I do not assent to the proposition that the returns of election inspectors are final and conclusive, no matter how erroneous they may in fact be. This contention I deem to be directly contrary to the provision of the Constitution that the convention shall be held only in case the majority of the electors voting thereon shall decide in favor

of the convention. The Constitution having provided that a vote of a majority is a prerequisite to hold such convention, it would not be competent for the Legislature to prescribe a different test by which the question whether or not a convention should be held should be determined. If the act of the Legislature under which the special election was held attempted to make the election returns, rather than the majority of votes, the determining factor, the act would be clearly unconstitutional and void. The act of the Legislature referred to does not, when fairly construed, contain such a provision. The act referred to, also providing for the holding of a special election on April 7, 1914, provides that: .

"If a majority of the electors voting on such· question are shown to have voted in the affirmative upon such question, as shall appear from the returns of county boards of canvassers * * * and by its canvass of such returns, such convention shall be held and shall be deemed duly called thereby, and delegates therefore shall be elected as provided in section 2 of article 14 of the Constitution."

This act and the provision of the Constitution to which it was intended to give effect must be read and construed together. It cannot be presumed, in the absence of clear language disclosing such an intent, that the legislative design was to override the Constitution. The statute contemplates that the returns of county boards of canvassers shall be true and in accord with the facts. The statute does not therefore prescribe any different test by which to determine whether the convention shall be held than that prescribed in the Constitution. Under the constitutional provision and under the statute it is necessary, in order that the convention shall be held, that the majority of the electors voting upon such question shall have voted in the affirmative. If the statute was susceptible only of such an interpretation as to provide a test different from that prescribed in the Constitution, it would be unconstitutional and void. As I read it, it in no way offends in this respect against the provisions of the Constitution now under consideration.

[2] It is further urged that, even though the returns of the election officials are shown to be fraudulent and certify the result to be contrary to the facts, the courts of this state are without jurisdiction to grant relief. I do not assent to this proposition. On the contrary, I think it clear that if it could be shown that the majority of the electors voting were opposed to the calling of the convention, and that this majority was by fraudulent means converted into a minority on the face of the returns, it would be the imperative duty of the Supreme Court to intervene so as to give effect to the constitutional provision. The very fact that there was no remedy at law should itself furnish the ground for granting equitable relief. It is true that equity will not take jurisdiction of election contests involving the title to office because in all such cases an adequate remedy exists at law. The Constitution makes a majority of the electors voting a condition precedent to holding the convention. Such a convention can only be held in compliance with the Constitution. If it can be

shown that there was not such a majority as the Constitution requires, then the convention cannot be held. The duty to uphold the Constitution, and to give effect to its provisions, and to see to it that its provisions are not overridden by fraud, rests upon the Supreme Court, which under the Constitution is continued as a court of general jurisdiction in law and equity. The fact that the power is not conferred in express terms to grant relief in such a case is immaterial, where it plainly arises by necessary implication. If it be true, as contended by the plaintiff, that through corrupt methods a majority in fact against the holding of the convention had been converted into a minority on the face of fraudulent election returns, and that no remedy exists, then a situation is presented where the Supreme Court, through the exercise of its equitable powers, should devise a remedy adequate to the situation, to the end that the Constitution may be upheld and justice done.

The cases which hold that equity will not assume jurisdiction in election controversies are cases involving the title to office, where an adequate remedy is afforded by quo warranto or where some other adequate remedy exists at law. These cases have no pertinency to a case such as the present. The Constitution of the state prescribes the manner in which it may be amended, and it follows that it cannot lawfully be amended in any other way. The manner prescribed in the Constitution is the only legal way in which the Constitution can be amended. Any other method of amendment or revision is illegal and revolutionary and not to be tolerated under a government of law. If the proposition whether a constitutional convention should be called could be decided by false election returns in lieu of a majority vote, the same unlawful method might be used to declare the proposed Constitution adopted, and if there is no remedy for this situation in one case there will be none in the other. The idea that courts of justice are powerless in such an emergency to grant redress enunciates a doctrine to which I am unwilling to subscribe. Fraud confers no right. The fact that it has been successful gives it no immunity, but, on the contrary, furnishes an additional reason why through the orderly instrumentalities of justice it should be overthrown and the Constitution upheld and the will of the majority vindicated. The supreme law of the state having specifically provided that a constitutional convention should only be held in the event that a majority of the electors voting upon the proposition voted in favor of that proposition, it necessarily follows that, if a majority of the votes cast were not in favor of holding such a convention such a convention cannot be held. Whether or not a majority did vote in favor of the proposition or against it is a question of fact, and presents a judicial and not a political question. Whether the proposition to hold a convention shall be submitted to the people, and whether that proposition shall be supported or opposed, present for determination questions of a political nature, with which the judicial branch of the government has no concern. In McConaughly v. Secretary of State, 106 Minn. 392, 119 N. W. 408, Elliott, J., writing for the Supreme Court of Minnesota, says:

"An examination of the decisions shows that the courts have almost uniformly exercised the authority to determine the validity of the proposal, submission, or ratification of constitutional amendments."

In support of this proposition the court then reviews the decisions in many states and demonstrates that they sustain the proposition asserted. I shall not review the authorities sustaining the proposition that in such a case as this the courts, when properly moved thereto, are clothed with authority to act, and that, where no adequate remedy at law exists, equity will grant relief, but shall merely cite the following cases where this proposition will be found to be abundantly fortified: Boren v. Smith, 47 Ill. 482; People ex rel. Wheaton v. Wiant, 48 Ill. 263; Dickey v. Reed, 78 Ill. 201; Sweatt v. Faville, 23 Iowa, 321; Gibson v. Board of Supervisors of Trinity Co., 80 Cal. 359, 22 Pac. 225; Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1, appeal dismissed Marshall v. Dye, 231 U. S. 250, 34 Sup. Ct. 92, 58 L. Ed. 206.

[3] Nor can I concur in the view, urged by the learned Attorney General, that in such a case an elector or taxpayer has no right to invoke the aid of the court. Doubtless such an action might properly be brought by the Attorney General of the state; but, if he does not initiate the action, I can see no reason why the door of the court should be closed to a citizen and taxpayer who asks of the court only such relief as the Constitution and justice require should be given to them. In Ellingham v. Dye, supra, the right of the elector and taxpayer to enjoin the board of election commissioners of Indiana from submitting the proposed new Constitution to the people of the state was sustained. In passing upon the right of the plaintiff to maintain such an action the court said:

"The power to control by mandamus and injunction the ministerial acts of officers in relation to elections under unconstitutional statutes has been declared by this court and courts of other states in apportionment cases. * * * Many of the decisions reviewed above established the capacity of the appellee to sue in such a case as this, and with this view our own cases are in harmony. * * * The small proportionate sum of the cost of the election which would fall upon appellee as a taxpayer is not of itself sufficient to destroy his competency to sue. 'Where a suit is brought by one or more, for themselves, and all others of a class, jointly interested, for the relief of the whole class, the aggregate interests of the whole class constitutes the matter in dispute.' Brown v. Trousdale, 138 U. S. 389 [11 Sup. Ct. 308, 34 L. Ed. 987]."

[4] One other preliminary objection is urged by the Attorney General which requires consideration. It is that under section 605 of the Code of Civil Procedure this action cannot be brought in this judicial district. That section provides as follows:

"Where a duty is imposed by statute upon a state officer, or board of state officers, an injunction order to restrain him or them, or a person employed by him or them, from the performance of that duty, or to prevent the execution of the statute, shall not be granted, except by the Supreme Court, at a term thereof, sitting in the department in which the officer or board is located, or the duty is required to be performed; and upon notice of the application therefor to the officer, board, or other person to be restrained."

This section of the Code is directory merely, and not mandatory. It is a rule of convenience, and the Supreme Court doubtless has power to transfer the action to the judicial department in which the state officer sought to be restrained is located, in a case where the convenience of the court or the parties would be promoted by such a transfer. It is the duty of the court to give this section such a construction as is consistent with its constitutionality. If a different interpretation is placed upon it, and it is held to curtail the general jurisdiction of the Supreme Court, by conferring upon certain justices a power which it prohibits other justices from exercising, it would, in my judgment, be in violation of section 1 of article 6 of the state Constitution and therefore void. This section of the Constitution provides:

"The Supreme Court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the Court of Appeals as now is or may be prescribed by law not inconsistent with this article."

It will be observed that this jurisdiction extends throughout the state, and is not limited or circumscribed by the boundaries of judicial districts or departments. Every justice of the Supreme Court of the state, subject to certain limitations imposed upon justices assigned to the Appellate Division, have equal power with all other Supreme Court justices, and the official character or personality of the litigant cannot be used to deprive the justices of such department of the power to exercise the jurisdiction conferred by the Constitution. A somewhat similar statute to the one in question was construed by the court in Mussen v. Ausable Granite Works, 63 Hun, 367, 18 N. Y. Supp. 267. It was there held that the Legislature was without power to limit or qualify the jurisdiction of the Supreme Court, and that the section of the Code then under consideration attempting to do so by limiting the territory within which the suitor could proceed in the action in which the city of New York was a party was unconstitutional. The reasons for this conclusion are so convincingly set forth in the opinion of the court in that case, which was delivered by Mr. Justice Herrick, that further discussion of the point seems to me unnecessary.

Having thus considered the preliminary objections urged to this action by the Attorney General, and finding these objections untenable, it becomes the duty of the court to consider the questions presented upon the merits.

[5] It is urged by the plaintiff that chapter 819 of the Laws of 1913, pursuant to which the special election was held, is unconstitutional, in that it violates section 4, article 2, of the New York state Constitution. Section 4 of article 2 of the Constitution provides that:

"Laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters, which registration shall be completed at least ten days before each election."

Under chapter 819 of the Laws of 1913, the provisions of which are now assailed, it is provided that the election is to take place on the first Tuesday in April, 1914, and the registration of votes on the

second Saturday preceding such election from 8 o'clock in the forenoon until 10 o'clock in the evening. The plaintiff claims that, as the election begins at sunrise on the first Tuesday in April and closes at sunset on that date, the registration for which is completed on the second Saturday previous, such registration is not completed "ten days before" such election, as provided by the provision of the state Constitution.

Whether or not there is merit in this contention depends upon the correct interpretation of the words "completed at least ten days before such election." The statute fixed April 7th, the first Tuesday in April, as election day. The registration was to be completed on Saturday, March 28th. This was ten days before the election, and, in my judgment, was in compliance and not in conflict with the provision of the state Constitution. The fact that the registration is not completed at least 240 hours before the opening of the polls on election day does not render the statute in question offensive to the constitutional provision. It would, it seems to me, be the extreme of technicality to seize upon a fraction of a day for ground for declaring unconstitutional an act of the Legislature, and to nullify a vote of the people upon this proposition upon a ground so unsubstantial and immaterial. Where the hour itself is not material, the law in its calculations disregards fractions of a day. Subtracting the day of regirtration from the date of election, ten days remain, which is the time prescribed by the Constitution. That this is the correct method of calculating the time was held in People ex rel. Hart v. Goodrich, 92 App. Div. 445, 87 N. Y. Supp. 114, affirmed 180 N. Y. 522, 72 N. E. 1148; and upon the authority of that case and for the reasons assigned the act assailed seems to me to be a constitutional exercise of the legislative power.

[6] We come now to the question of fact involved as to whether or not a majority of the electors voting upon the proposition for a constitutional convention voted in the affirmative or negative. The election returns are merely prima facie evidence of the votes actually cast. They are not conclusive. The votes cast are the facts which determine the result of an election. Where the election returns are shown to be fraudulent or incorrect, and the fraud is general or the error substantial, they may be impeached, and when impeached for these reasons their probative value is destroyed. This proposition is too firmly fixed in the jurisprudence of this state to warrant further discussion or make necessary a consideration of the rule prevailing in other jurisdictions. People ex rel. Deister v. Wintermute, 194 N. Y. 99, 86 N. E. 818; People ex rel. Stapleton v. Board, etc., 119 N. Y. 175, 23 N. E. 533; People ex rel. Judson v. Thacher, 55 N. Y. 525, 14 Am. Rep. 312; People ex rel. Smith v. Pease, 27 N. Y. 45, 84 Am. Dec. 242; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451.

The plaintiff does not question the election returns throughout the state at large, but challenges the returns in thirteen election districts of the twelfth assembly district, namely, the fourth, the fifth, the sixth, the eighth, the ninth, the eleventh, the twelfth, the thirteenth, the fourteenth, the seventeenth, the eighteenth, and nineteenth elec-

tion districts, and the fourth election district of the fourteenth assembly district. The shocking situation revealed by the evidence as to these election districts need not be discussed in detail. It is sufficient to point out that the frauds committed in these districts were so widespread as to utterly destroy the probative value of the returns made by the election officials of these districts. Such being the case, these official returns should be disregarded and excluded from the statement of the vote throughout the state at large, and the court is required, under the rule declared in People ex rel. Judson v. Thacher, supra, to determine by other legal evidence what the vote actually was in the districts in which the election returns have been rejected.

The plaintiff has offered the affidavits of electors in these districts that they voted against the holding of the constitutional convention, and the Attorney General has submitted affidavits of electors that they voted in these districts for the holding of a constitutional convention. In addition to these there has been submitted to the court by the Attorney General proof which is not contradicted or questioned upon this motion that an error in addition was made by the board of county canvassers in Kings county in totaling the vote cast for the proposition in the fiftieth election district of the twenty-second assembly district in Kings county. The returns from this assembly district show 1,225 votes in favor of the proposition, whereas it is uncontradicted and unquestioned that if error in addition had not been made the returns should have shown that 2,225 were cast in favor of the proposition. This additional 1,000 votes entirely destroys the prime facie case of the plaintiff, and shows that, even if the fraudulent returns from the districts specified are disregarded, and the votes which legal proof shows were cast for and against the proposition are included, there was, taking into account the 1,000 votes cast in the twenty-second assembly district of Kings county for the proposition which were erroneously omitted from the official returns, a clear majority throughout the state of the electors voting in favor of the proposition that the constitutional convention should be held.

In view of this fact, it follows that the present motion must be denied.