Harvey T. LISLE et al., Appellants,

v.

C. L. SCHOOLER, Appellee.

Court of Appeals of Kentucky.

March 23, 1956.

———◆———

Beverly White, Winchester, for appellants.

Hays & Hays, Winchester, for appellee.

CULLEN, Commissioner.

At the time of the November 1955 general election, there was a vacancy (which had existed for more than 90 days) in the office of constable for the first magisterial district in Clark County. No one filed or was nominated for the unexpired term, and the ballots did not indicate that there was to be any election for the office of constable, but C. L. Schooler received some write-in votes for the office. The county board of election commissioners refused to canvass the returns for the office of constable, whereupon Schooler brought this action against the board. Judgment was entered directing the board to canvass and certify the votes for the office of constable, and if Schooler was elected, to issue him a certificate of election. The board has appealed from the judgment.

The case was submitted upon the pleadings and a stipulation of facts. The complaint, as amended, alleged that the fact of the vacancy "was generally known" in the district; that "many" voters approached Schooler before the election and urged him to become a candidate; that he printed and distributed "over the district and in each of the precincts" cards (150 in number) announcing his candidacy; that he personally called upon "many" of the voters to solicit their support; that on the election day voluntary workers in each precinct were present near the polling places informing voters of the vacancy in the office and of his candidacy, and distributing cards; and that "many" qualified voters in the district cast write-in votes for him for the office. Attached to the complaint were the affidavits of *two* voters that they had cast write-in votes for Schooler. The complaint also alleged that the fact of the vacancy was generally known for more than 60 days before the election; "so that" the voters knew of the vacancy and understood that an election would be held to fill it.

The answer alleged that there were 904 registered voters in the district; that at the November 1955 election 554 votes were cast in the race for Governor; that more than 500 of the persons who voted at the election did not vote for the office of constable; that the "vast majority" of the voters did not know that anyone was seeking the office of constable or that there was a vacancy in the office or that there was an election being held for the office; that the ballots did not designate the office of constable and there was no public notice given that an election was to be held for constable; and that less than 20 votes were cast for the office of constable.

The stipulation recited that there were 904 voters in the district; that 554 votes were cast for Governor at the 1955 election; that a vacancy existed in the office of constable but no one was nominated for the office and the ballots did not indicate that a constable was to be elected; that "qualified voters" had urged Schooler to run for constable; that he distributed cards "over the district"; that he called on "many" voters and solicited their votes; that his cards were "distributed at each of

the three polls on election day"; that "at least three voters" cast write-in votes for Schooler and he "believes that many others did so."

Mention of some of the general law relating to elections to fill vacancies is necessary to a proper understanding of the issue in this case. First, when a vacancy is to be filled at the general election, no call or writ for the election is required. McCreary v. Williams, 153 Ky. 49, 154 S.W. 417. Second, there is no requirement of publication of any notice of a general election, or of the offices to be voted for, or of the candidates, or of sample ballots. Third, there is no provision by which a person can have his name placed upon the ballot as an *independent* candidate to fill a vacancy, if the vacancy occurs after the time prescribed in KRS 118.130 (3) for filing petitions of nomination has expired.

Approaching now the specific issue in the case, we find it to be the law in this jurisdiction, and in most others, that where an election to fill a vacancy is held at the time of the general election, and there was no formal or official notice of the special election, it must be shown, in order for the special election to be valid, that the voters generally had actual knowledge that the vacancy was to be filled. Wilson v. Brown, 139 Ky. 397, 58 S.W. 595; Wooten v. Wheeler, 149 Ky. 62, 147 S.W. 914; Annotation, 158 A.L.R. 1189, 1190. In those cases where a special election has been held valid, the most decisive factor has been that a great percentage of the voters actually cast their votes for the office in question. Annotation, 158 A.L.R. 1191.

In Wooten v. Wheeler, 149 Ky. 62, 147 S.W. 914, an election to fill a vacancy in the office of county attorney was held invalid where the office was not listed on the ballot and it appeared that only seven write-in votes were cast for the office. A candidate for the office had filed nomination papers, but through fraud or mistake his name and the office had been omitted from the ballot.

In Wilson v. Brown, 139 Ky. 397, 58 S.W. 595, an election to fill a vacancy in the office of circuit judge was held invalid where the office was not listed on the ballot and only 94 persons out of a total of 12,000 voters cast write-in votes for the office. A candidate for the office had distributed some pasters on the morning of the election, but this was held insufficient to constitute actual notice to the voters generally.

The record before us is unsatisfactory in that it speaks in generalities as concerns the number of voters who were aware that an election for constable was being held, and as concerns the number of votes actually cast for the office. The best that the complaint and the stipulation offer is that "many" voters were informed and "many" write-in votes were cast.

We think the controlling question is whether a sufficient number of write-in votes was cast to indicate that the voters generally had actual knowledge of the fact that an election was being held for constable. Schooler's alleged activities with respect to distributing cards and placing workers at the polls can be given no significance if the number of votes cast was so insignificant as to show that there really was no actual knowledge of the election on the part of a substantial number of the voters. We appreciate that the office of constable is a minor one, and less votes ordinarily would be cast in a constable's race than for other offices. Nevertheless, we cannot hold that three votes (which are all that are proved to have been cast) are enough.

It is our opinion that the court should direct the board of election commissioners to meet and canvass the votes cast for the office of constable, and then certify the count to the court. Evidence then should be introduced as to the number of votes cast for constable in previous elections. If the number of votes cast in the 1955 election, in comparison to those cast in previous elections, is sufficient to support the conclusion that the voters generally

were aware that an election for constable was being held, and if Schooler received a majority of the votes cast, then the court will direct the board of election commissioners to issue a certificate of election to Schooler. Otherwise, the complaint will be dismissed.

 The appellants make some contention that the action here is in effect one for a recount, and cannot be maintained because it was not filed within the time prescribed by statute for recount proceedings, and because the integrity of the ballots has not been shown. This contention is without merit. See Riddell v. Grinstead, 156 Ky. 319, 160 S.W. 1069; Wooten v. Wheeler, 149 Ky. 62, 147 S.W. 914.

The judgment is reversed, for proceedings in conformity with this opinion.