(163 App. Div. 741)

·SCHIEFFELIN v. KOMFORT et al.    (No. · 6107.)

(Supreme Court, Appellate Division, First Department.   August 27, 1914.)

ELECTIONS  (§ 96*)—REGISTRATION—"ELECTION."

 Submission to the people of the question whether there shall be a constitutional convention, and voting by them thereon, is not an "election," within Const. art. 2, § 4, requiring registration of voters 10 days before an election; other sections indicating this refers to an election of officers.

 [Ed. Note.—For other cases, see Elections, Cent. Dig. § 97;  Dec. Dig. § 96.*
 For other definitions, see Words and Phrases, vol. 3, pp. 2336-2339;  vol. 8, pp. 7647, 7648.]

 Dowling, J., dissenting.

Appeal from Special Term, New York County.

Application by William Jay Schieffelin for an injunction to restrain V. Komfort and others, the Board of Election and the electing officials of the state, from taking steps preliminary to the nomination and election of delegates to a constitutional convention.  From an order denying the application (86 Misc. Rep. 678, 149 N. Y. Supp. 254), plaintiff appeals.  Affirmed.

Order affirmed by Court of Appeals, 212 N. Y. 520, 106 N. E. 675.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Louis Marshall, Albert S. Bard, and Mansfield Ferry, all of New York City, for appellant.

Ellwood M. Rabenold, Asst. Atty. Gen., for respondents.

INGRAHAM, P. J.   I have no doubt as to the power of the court to intervene to prevent the election of delegates to a constitutional convention, if such convention was not authorized by a vote of the people, as required by the Constitution, and I think, upon competent proof by the plaintiff that such a constitutional convention was not authorized by the people as required by the Constitution, that the court would be authorized to restrain the election officers of the state from providing means for the election of delegates to a convention.   But it seems to be conceded that the plaintiff failed to prove at the special term that a majority of the people actually voting on that question did not vote in favor of such a constitutional convention.

The only other question presented that requires discussion is whether this vote was taken in accordance with the mandate of the Constitution.   It seems to be conceded that chapter 819, Laws 1913, which provides for the taking of the vote on the first Tuesday of April, 1914, was complied with.   The vote was duly canvassed, as required by statute, and from the statement of the vote it appeared that a total of 310,-444 votes were cast, of which 153,222 votes were in favor of the proposition, and 151,969 votes were against it.   The remaining votes of those attempting to vote were either blank or void.   Of course, this canvass is prima facie evidence of the vote that was actually cast and, as aforestated, the plaintiff failed to prove that the canvass was incorrect, and that, of the people who actually voted as to whether there should be or not be a constitutional convention, a majority voted in

favor of holding such a convention. It is claimed, however, by the plaintiff that this vote was not in accordance with the Constitution. That is based upon the claim that article 2 of the Constitution provides a method by which those entitled to vote at an election to be held by the people of this state can be ascertained, and for the registration of such voters. Section 4, art. 2, of the Constitution provides:

"Laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters; which registration shall be completed at least ten days before each election."

If the submission of the question to the people as to whether or not there should be a constitutional convention was an election within the meaning of this provision, then it seems to me clear the Constitution was not complied with. There was no registration of voters for an election. What the statute authorized and what the officers did was to take the registry of voters for the general election of 1913 and treat that as the registry of voters, and on the second Saturday before the vote was to be taken this registry list was revised. This revision involved the adding to and striking from the registry of voters the names of voters who had moved into or out of the district, or who in the meantime had become qualified or disqualified to vote. There was no registration of voters for an election, and therefore the question, it seems to me, is whether this vote was an election within article 2 of the Constitution. I am inclined to think such a vote was not an election within the meaning of this article. Section 1 of that article provides:

"Every male citizen of the age of twenty-one years, who shall have been a citizen for ninety days, and an inhabitant of this state one year next preceding an election, and for the last four months a resident of the county and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such election in the election district of which he shall at the time be a resident, and not elsewhere, for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to the vote of the people."

Section 2 provides for persons excluded from the right of suffrage. Section 3 provides that certain occupations and conditions were not to affect residence. Section 4, the section in question, provides that the registration of voters shall be completed at least 10 days before each election.

"Such registration shall not be required for town and village elections except by express provision of law. In cities and villages having five thousand inhabitants or more, according to the last preceding state enumeration of inhabitants, voters shall be registered upon personal application only; but voters not residing in such cities or villages shall not be required to apply in person for registration at the first meeting of the officers having charge of the registry of voters."

Section 5 provides that:

"All elections by the citizens, except for such town officers as may by law be directed to be otherwise chosen, shall be by ballot, or by such other method as may be prescribed by law, provided that secrecy in voting be preserved."

Section 6 provides that:

"All laws creating, regulating or affecting boards of officers charged with the duty of registering voters, or of distributing ballots at the polls to voters, or of receiving, recording or counting votes at elections, shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards or officers are to serve, cast the highest and the next highest number of votes. All such boards and officers shall be appointed or elected in such manner, and upon the nomination of such representatives of said parties respectively, as the Legislature may direct."

This interpretation of the word "election" as used in section 4 of article 2 is further supported by the fact that section 1 of the same article, which prescribes the qualification of voters, expressly provides that such qualification shall include the right to vote at "an election * * * for all officers that now are or hereafter may be elective by the people," and also the right to vote "upon all questions which may be submitted to the vote of the people." This is an express recognition of a distinction between an election and a mere referendum or expression of the will or desire of the people upon any given subject.

The election specified in this article would seem to refer to the general election whereby the electors of the state elect the officers who are to be elected by the people. When there are no such officers to be elected, the vote of the people not at a general election, upon an abstract question submitted to them for their determination, can hardly be said to be an election within the ordinary meaning of that term. Nobody is elected. Nothing is done to which the word "election" would apply.

The question as to whether there should be a convention was submitted to the people under section 2, art. 14, of the Constitution, which provides:

"At the general election to be held in the year one thousand nine hundred and sixteen, and every twentieth year thereafter, and also at such times as the Legislature may by law provide, the question, 'shall there be a convention to revise the Constitution and amend the same?' shall be decided by the electors of the state; and in case a majority of the electors voting thereon shall decide in favor of a convention for such purpose, the electors of every Senate district of the state, as then organized, shall elect three delegates at the next ensuing general election at which members of the assembly shall be chosen, and the electors of the state voting at the same election shall elect fifteen delegates at large."

There is nothing in this provision that requires the submission of this question to the people on an election day or at an election, nor is there any thing in the section that restricts the Legislature as to the method by which that question is to be submitted. The election of delegates must be at the "next general election." The section further provides that:

"Any proposed Constitution or constitutional amendment which shall have been adopted by such convention, shall be submitted to a vote of the electors of the state at the time and in the manner provided by such convention, at an election which shall be held not less than six weeks after the adjournment of such convention."

In the short time that is available for discussion of this question, I have not been able to make an exhaustive examination of the authori-

ties that would bear upon the question. So far as I can ascertain, the question has never been presented in this state. In Seaman v. Baughman, 82 Iowa, 216, 47 N. W. 1091, 11 L. R. A. 354, the question whether a tax upon the property of a district township for the construction of a schoolhouse was an election, within the meaning of a constitutional provision that required that all elections by the people shall be by ballot was presented, and it was held that such meetings were not an election within such constitutional provision. See, also, Police Commissioners v. City of Louisville, 66 Ky. (3 Bush.) 597. In Massachusetts it was considered necessary to provide by express statute that the term "elections" shall be defined as applying to a vote upon a proposed constitutional amendment. Rev. Laws 1902, p. 103. I, therefore, think the method by which this question, "Shall there be a convention to revise the Constitution and amend the same?" should be submitted to the people, as well as the method by which the people should pass on that question, is solely within the discretion of the Legislature, and is not controlled by section 4, art. 2, of the Constitution.

Of course, only those entitled to the right of suffrage as established by article 2 could vote to determine that question, because it was to be decided by the electors of the state. But whether there was to be a registry of the voters to determine that question does not seem to be controlled by any provision of the Constitution. In other words, the meeting of electors to determine the question of the convention is not within section 4, art. 2, of the Constitution.

I think, therefore, the act of 1913 that provided for this vote by the people was constitutional, and that the vote was taken in accordance with its provisions. Other questions were argued by the plaintiff, but we agree that upon the papers before the Special Term the court was not justified in interfering with the election of delegates to a constitutional convention thus authorized by a vote of the people.

It follows, therefore, that the order should be affirmed, with $10 costs and disbursements.

McLAUGHLIN, J., concurs.

LAUGHLIN, J. I concur with Mr. Justice Seabury on all points considered in his opinion delivered at Special Term; but two points urged on this appeal by the learned counsel for the appellants are not considered in that opinion, and merit an expression of our views. Neither the act of the Legislature pursuant to which the special election was held on the 7th day of April, 1914, nor any other statute, provided for or required a special registration of the electors for that election. The Legislature adopted the registration for the preceding general election, and authorized the correction thereof, as had been the uniform practice in this state, for special elections prior to the adoption of section 4 of article 2 of the present Constitution, enforcing upon the Legislature the duty of enacting laws providing for the registration of voters, and providing that such registration "shall be completed at least ten days before each election," and that in cities and villages having 50,000 inhabitants or more the registration must be "upon personal application only." Justice Seabury has shown that the completion of

the registration on the second Saturday before the Tuesday on which the election was held constituted a compliance *as to time* with this provision of the Constitution. This particular provision of the Constitution relating to the time of completing the registration was particularly designed to prohibit any registration at a time so near election that it would be impracticable or impossible to investigate the right of electors so registering to vote. I am of opinion that the Constitution does not require a special original registration for each election, and that it was clearly within the discretion of the Legislature to prescribe that there should be only one registration annually, which should be used for all elections. That, in effect, is what it has done. It merely provided for correcting the then existing registration before the special election. If the void and blank ballots are to be counted in determining whether the majority of the electors voting on the proposition as to whether or not there should be a constitutional convention have decided in favor of the proposition, then concededly the proposition to hold a convention was not carried.

I am of opinion, however, that the provisions of section 2 of article 14 of the Constitution are to be construed as meaning the majority of the electors who have effectively voted for and against the proposition. It was not, I think, intended to authorize the voting of blank ballots by electors who could not decide whether they were in favor of or opposed to the proposition, and have such votes added to the votes against the proposition in determining whether the proposition to hold a convention was adopted by a majority of the electors voting on the proposition. Voting a void or blank ballot is doubtless voting at the election, but it is not voting on the proposition as to whether or not there shall be a constitutional convention.

I, therefore, vote to affirm the order denying the injunction.

HOTCHKISS, J. I concur with the learned Presiding Justice. The construction given to the word "election," as found in article 2 of the Constitution, does not require that the word shall be similarly defined and limited when used in criminal or other statutes which have for their object the purity of the ballot, and its protection from fraud whenever, at the polls, the people seek to express themselves upon any question, whether it be in the choice of candidates for office or any other matter. In brief, I think the word "election" is susceptible of different constructions, according to the "subject-matter and the context, the apparent policy and objects of the Legislature." State v. Hirsch, 125 Ind. 207, 213, 24 N. E. 1062, 1064 (9 L. R. A. 170), quoting Endlich, Interp. Stat. § 337.

DOWLING, J. (dissenting). Article 2, § 4, of the Constitution of the state of New York requires that:

"Laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established, and for the registration of voters; which registration shall be completed at least ten days before each election. Such registration shall not be required for town and village elections except by express provision of law. In cities and villages having five thousand inhabitants or more, according to the last preceding state enumeration of inhabitants, voters shall be registered upon personal

application only; but voters not residing in such cities or villages shall not be required to apply in person for registration at the first meeting of the officers having charge of the registry of voters."

The effect of this provision, it seems to me, is to render the late submission of the question of the holding of a constitutional convention invalid, for the reason that the act providing for such submission did not provide for the registration of the voters of the state, in conformity with the constitutional requirements, nor was such registration had. To produce this result, however, it is necessary to construe the word "election" as used in this section as applying to a submission to a vote of the people of the state of a question to be decided then, as well as to the choice of their officers by ballot. Reading the whole article together, it seems clear to me that when the word "election" is used, it is used in the broadest sense, as including any exercise of the franchise by the voters of the state, and not merely referring to their choice of officials. Thus section 1 of the same article, providing what qualifications are required for voters, refers to the right of a qualified voter to vote at an election, not only for all offices that now are or hereafter may be elective by the people, but also upon all questions that may be submitted to the vote of the people. So also section 2, prohibiting wagers upon the result of an election, and disqualifying a person so wagering from voting thereat, and also prohibiting bribery at an election, would seem by reasonable intendment to refer to more than a mere choice of officers; for upon no reasonable theory can such an important question as a change, or providing machinery for a change, in the organic law of the state, be deemed less important than the choice of officers, very often merely local in their authority. Furthermore, unless the word "election" be so construed, it seems to me that the use of voting machines under section 5 of the same article could not be permitted for the use of a voter in declaring his position upon anything save the election of officers. The language of section 4 itself, as contained in the second sentence thereof, shows that the first sentence applies to all elections, general and special, or general or local, for if the contrary were the case, the exception contained in the second sentence would not be necessary.

To hold that the action of the people, in voting upon a proposition submitted to them for action, does not come within the scope of an election would, it seems to me, not only encourage fraud, such as was practiced in this particular election, but would make such fraud immune from punishment, for section 764 of the Penal Law (Consol. Laws, c. 40), defining the acts which constitute misdemeanors in relation to elections, expressly provides that it shall apply to general and special elections, municipal elections, and town meetings. Unless voting upon a referred question comes within the definition of a general election, there is no section of the Penal Law under which frauds by election officers to influence the result of such voting can be punished. So section 765 of the Penal Law, in relation to illegal voting, refers specifically to voting at elections or town meetings. If a vote upon a referred question does not come within the scope of the word an "election," then there can be no punishment now inflicted for illegal voting

thereat. The same criticism would apply to prosecutions arising under sections 766, 767, 768, 769, and 772 of the Penal Law, defining various crimes against the election franchise, the language of which is applicable to elections and town meetings only. From these considerations, it seems to me that every motive of public policy and every fair intendment of the meaning assigned to the word "election," wherever it is used in our statutes, require that it should be interpreted to mean, not only the selection of officers by the voters, but as well their action in passing upon all questions submitted to them for determination. As it is clear that no such registration as is required by the Constitution was required or had in advance of the submission of this question for popular vote, it follows that the act under which the question was submitted was unconstitutional, and no valid result could be, or has been, reached thereunder.

I am also of the opinion that the meaning of article 2, section 4 of the Constitution is that 10 full calendar days shall elapse between the completion of the registration and the date fixed for the holding of the election; as in this case the registration was not completed until 10 o'clock on the evening of Saturday, March 28th, while the voting was to commence at sunrise on April 7th, 10 full calendar days did not elapse, and this further constitutional requirement was not satisfied.

These two considerations impel me to dissent from the affirmance of the order appealed from, and to vote for the reversal of the order and the granting of the injunction prayed for.