**Jack D. KELTCH, Petitioner,**

v.

**The ALFALFA COUNTY ELECTION BOARD and Janet Crouch, real party in interest, Respondents.**

**No. 67361.**

Supreme Court of Oklahoma.

Jan. 20, 1987.

As Corrected on Denial of Rehearing June 15, 1987.

Peter M. Keltch, Keltch, Blew & Cullen, Cherokee, for petitioner.

Ronald R. Hadwiger, Hadwiger & Hadwiger, Cherokee, for respondents.

KAUGER, Justice.

This application to assume original jurisdiction and petition for a writ of mandamus involves a contested election, and because elections are matters of great public interest, we have assumed original jurisdiction. However, because the petitioner failed to demonstrate that the election outcome cannot be determined with mathematical certainty, the presumption in favor of the regularity and the validity of the election stands,[1] and the petitioner's application for a writ of mandamus is denied.

The Republican primary for County Treasurer of Alfalfa County, Oklahoma was held on August 26, 1986. The petitioner, incumbent Jack D. Keltch, and the respondent, Janet Crouch, were the only candidates filing for the office. Therefore, the primary results, if valid, are determinative of who will fill the office when the present term expires in July 1987. The initial tally reflected that Crouch had won by five votes. Subsequently, on September 5, 1986, an official recount of the votes re-duced the winning margin to three votes—665 votes for Crouch and 662 for Keltch.

Keltch timely filed a petition[2] in the district court alleging election irregularities. On September 2, 1986, the trial court determined that one irregular vote had been cast in the Republican primary by a registered Democrat. Keltch alleged that there were six more irregular votes rendering the results of the election impossible to determine with mathematical certainty. Two of the allegedly irregular votes had been cast by married women who were registered under their former surnames. According to Keltch, the remaining four votes resulted when two precincts issued more ballots than there were signatures subscribed on the poll book. The trial court found these allegations to be unsupported. Following the official recount, the trial court conducted a special hearing on September 11, 1986, at which it reaffirmed its September 2 findings.

Thereafter, Keltch petitioned this Court to assume original jurisdiction, and to issue a writ of mandamus to the Alfalfa County Election Board requiring it to hold a special election, asserting that the winner cannot be determined from the results of the primary with mathematical certainty.[3]

### ELECTION RESULTS ARE DETERMINED BY MATHEMATICAL CERTAINTY

#### A.

Keltch argues that because more ballots were used in the Republican primary than there were supporting signatures on the poll book in two precincts, the election should be invalidated. Although there were four more ballots *issued*—two in precinct 205 and two in precinct 202—than there were signatures on the poll book, *in neither precinct were there more ballots cast than there were supporting signatures on the poll books.*[4] In Okla-

---

**1.** *Arthur v. City of Stillwater,* 611 P.2d 637, 643 (Okla.1980).

**2.** Title 26 O.S. 1981 §§ 8–118–120 provide the procedure for an election contest.

**3.** *Helm v. State Election Bd.,* 589 P.2d 224, 227 (Okla.1979); *Williamson v. State Election Board,* 431 P.2d 352, 359 (Okla.1967).

**4.** The signatures and votes by precinct are:
Precinct 202 had 226 signatures. One was a duplicate so the actual number was 225. The

homa, the mathematical certainty of an election outcome is tested not by possibilities or probabilities but by simple arithmetic.[5]

■ The petitioner's contention finds no support in 26 O.S. 1981 § 7–117.[6] Although § 7–117 provides that persons who have been determined to be eligible to vote *shall sign the proper poll book,* the statute contains no invalidating sanction for violation of this provision. Statutory provisions which require certain things to be done but which do not mandate performance are considered directory not mandatory.[7]

Although the poll book is the best evidence of who voted in a particular election, it is not the only evidence. In *Coffey v. Board of Commissioners of McCurtain County,* 205 Okla. 238, 237 P.2d 139, 142 (1951), this Court found the absence of the poll book to be immaterial when the appellants sought to examine it to determine whether unqualified electors had been allowed to vote. Here, Keltch was able to examine all of the poll books in the election, and pursuant to his investigation, one voter was disqualified by the trial court. In the absence of any evidence that more votes were *cast* than there were supporting signatures on the poll books, the petitioner's argument that four votes should be discounted, thus voiding the results of the election, is not persuasive.

### B.

■ Keltch also argues that the votes of two married women registered under former surnames should be disregarded because they did not sign their names as they appeared on the original registration form. We do not agree. In cases such as this, regardless of gender, the determinative question which must be answered is whether the voter is qualified to vote. Title 26 O.S. § 7–114 requires a voter to announce his/her name to the precinct judge so that the judge may determine whether the person's original registration form is in the precinct registry. The statute is gender neutral, and it does not require that the name announced identically match the registration, only that the original form be found in the precinct registry. In the absence of illegal or fraudulent purposes, the common law freely permitted name changes, and even though the Change of Name Act, 12 O.S. 1981 §§ 1631–1640, is now the exclusive method for changes of name not arising from marriage, divorce, or adoption, it incorporates the common law antecedents.[8]

■ In *Ball v. Brown,* 450 F.Supp. 4, 10 (N.D.Ohio 1977), an Ohio statute requiring automatic cancellation of a woman's registration form following a change in marital status was found to violate the federal voting rights statute, 42 U.S.C. § 1971. The court found that cancellation arbitrary amounting to a deprivation of the fundamental right to vote. The evidence reflects that each of these challenged voters was known and had been known to the election officials for over fifty years, and that all were registered under their former sur-

total number of votes cast were for state senator—210, for state representative—224, for county treasurer—224.

Precinct 205 had 107 signatures; the total number of votes cast were for state senator—99, for state representative—107, for county treasurer—106.

Precinct 302 had 68 signatures. The total number of votes cast were for state senator—62, for county treasurer—67.

5. *Helm v. State Election Bd.,* see note 3 at p. 229, supra. Although Keltch requests this Court to assume original jurisdiction over an election contest, his counsel specifically disclaimed that there was any wrong doing or fraud by the election officials. This Court has long held that mere allegations of a wrong suffered is insuffi-

cient grounds to invoke the power of this Court by extraordinary writ.

6. Title 26 O.S. 1981 § 7–117 provides in pertinent part:

"Persons who have been determined to be eligible to vote shall sign, in the presence of the clerk, the proper pollbook, to be prescribed by the Secretary of State Election Board...."

7. *State v. Long,* 178 Okla. 409, 63 P.2d 60, 62 (1936); *McCarter v. Spears,* 157 Okla. 168, 11 P.2d 489, 491 (1932).

8. *Sneed v. Sneed,* 585 P.2d 1363, 1365 (Okla. 1978).

names. The trial court had correctly found them to be qualified voters. Disenfranchisement for failure to sign their names as they appeared on the original poll books would be no less a denial of their fundamental right to vote than was the case with the women in *Ball.*

■ As a matter of public policy, the Court generally indulges every presumption in favor of the validity of an election [9] and where possible, the validity of an election will be sustained by a liberal rather than a narrow statutory construction.[10] An election, not clearly illegal, will be upheld.[11] No allegations of fraud or corruption have been made. As a general rule, if there are no such allegations and only statutory informalities are involved, the results of the election should not be invalidated.[12] This rationale is premised primarily in the interest the electorate has in having its votes count and, secondarily, in the expense involved in conducting a second election. Just as there must be a point at which litigation must be determined to protect the rights of the respective litigants, so too, must there be a time when elections are determined to be final in order to protect the interests of the electorate—that time comes when an election can be determined to be valid with mathematical certainty.[13]

ORIGINAL JURISDICTION ASSUMED; WRIT OF MANDAMUS DENIED

All the Justices concur.

---

9. *City of Tecumseh v. City of Shawnee,* 148 Okla. 128, 297 P. 285 (1931).

10. *Gardner v. Scott,* 205 Okla. 333, 237 P.2d 863, 866 (1951); *Town of Grover v. Haskell,* 24 Okla. 707, 104 P. 56, 60 (1909).

11. *Gardner v. Scott,* see note 10, supra.

12. *Hembree v. City of Stilwell,* 597 P.2d 1218, 1220 (Okla.1979); *Gardner v. Scott,* see note 10, supra.

13. *Helm v. State Election Bd.,* see note 3, supra; *Williamson v. State Election Board,* see note 3 supra.