Eugene E. WALKER, et al., Appellants,

v.

OAK CLIFF VOLUNTEER FIRE PRO-
TECTION DISTRICT; David Rinken-
meyer, John Stelle, David Berlman, and
James Perry, individually and as di-
rectors and officers of Oak Cliff Vol-
unteer Fire Protection District; Oak
Cliff Volunteer Fire Department, Inc.,
an Oklahoma corporation; Board of
Commissioners of Logan County, Okla-
homa; Charles Haldik, Vance Kellogg,
and Ralph Taylor, individually and as
members of the Board of Commission-
ers of Logan County, Oklahoma; Shir-
ley J. Rothermel, Logan County Trea-
surer; Logan County Election Board;
Dean G. Mackey, Margaret Phillips and
Lorray Dison, individually and as
members of the Logan County Election
Board, Appellees.

No. 67839.

Supreme Court of Oklahoma.

March 27, 1990.

Rehearing Denied April 2, 1991.

Allen Mitchell, Sapulpa, for appellants.

Larry Brooks, Asst. Dist. Atty.; Jeff L. Hirzel, Guthrie, for appellees.

KAUGER, Justice.

The dispositive questions presented are: 1) whether a special election to establish a fire protection district, held without the notice prescribed by 19 O.S.1981 § 901.3,[1] is valid; and 2) if the election is invalid, whether parties contesting an election to form a fire protection district may seek redress either in law or in equity. We find: 1) that an election to create a fire protection district is void unless it is preceded by publication notice for two weeks in a newspaper of general circulation in the territory comprising the proposed district as required by 19 O.S.1981 § 901.3; and 2) that equity will intervene to cure defects in elections called to form fire protection districts even though 26 O.S.1981 § 8–109[2] precludes contesting the election.

## FACTS

On December 14, 1982, a special election was held to establish a fire protection district. In December of 1983, the appellants/contestants who reside in Logan County received their ad valorem tax statements increasing the taxes on their property. One of the contestants, Mr. W. had attempted to file a pro se petition with the District Court to have the election declared null and void on June 11, 1984. The trial judge refused to allow the petition to be filed, and advised Mr. W to obtain counsel. Nine months later, on August 14, 1984, the contestants filed an action in district court

1. Title 19 O.S.1981 § 901.3 provides:
"The County Clerk shall cause notice of the election to be given for two (2) weeks by publication in a newspaper of general circulation in the territory comprising the proposed district. Such notice shall state the time and place of holding the election and set forth the description of the boundaries of the proposed district and its general purpose and intention. Such notice shall require the electors to cast ballots which contain the words: 'Fire Protection District—Yes', and 'Fire Protection District—No', or words equivalent thereto. All persons resident of such proposed district, who are qualified electors in their respective precincts, shall be qualified to vote on such proposition."

2. Title 26 O.S.1981 § 8–109 provides in pertinent part:
"... Contests shall not be permitted in any election except those in which candidates are seeking office."
Section 8–109 was amended effective May 24, 1989. It now provides in pertinent part:
"... Contests alleging irregularities or fraud shall not be permitted in any election except those in which candidates are seeking office. Nothing in this section shall be construed to prohibit any proceedings in district court, which are otherwise authorized by law, alleging irregularities or fraud in an election."

to permanently enjoin operation of the appellee, the Oak Cliff Volunteer Fire Protection District (Fire Protection District), and to account for all funds collected. The contestants alleged that the Fire Protection District had been formed in violation of 19 O.S.1981 §§ 901.1 [3] and 901.3. Section 901.1 requires that a petition, signed by twenty-five percent of the title holders within the proposed fire protection district, must be filed with the board of county commissioners. Before an election to form a fire protection district can be held, section 901.3 provides that publication notice of a special election to form a fire protection district *"shall"* be given for two weeks in a newspaper of general circulation within the territory comprising the proposed fire protection district.

On September 6, 1984, the Fire Protection District filed a demurrer to the contestants' petition asserting that it contained a defect of parties, and that it failed to state a cause of action. The contestants filed an application with the district court to file an amended petition on December 12, 1984. The amended petition dismissed several named defendants, because they were not personally liable for reimbursement of funds collected or expended by the Fire Protection District. On December 28, 1984, the Fire Protection District filed a motion to dismiss for failure to state a claim. It also alleged that the cause was barred by the equitable doctrine of laches. On March 6, 1985, the trial court denied the contestants' motion to file a second amended petition, and granted the motion to dismiss. The contestants appealed the trial court's decision. On May 13, 1986, the Court of Appeals reversed finding that: 1) no attempt had been made to comply with the notice provisions of § 901.3; [4] and 2) because the motion to dismiss did not present any evidence of laches, the trial court erred in sustaining the motion. The cause was remanded with directions to proceed to trial.

At the hearing on the cause on October 1, 1986, testimony was elicited from a number of witnesses opposing the election. Mr. W, Ms. P, Mrs. V., and Mr. T testified that they were unaware an election had been held until they received their tax assessments—*a year after the election.* Mr. W testified that on initial inquiry, he was assured by the Election Board, the County Commissioners, and the County Clerk that the election had been advertised and that it was "proper and legal." Once residents of the Fire Protection District became aware of the additional tax, they took action to vitiate the election. Mr. W testified that immediately upon receiving his tax bill, he contacted the District Attorney concerning the inadequacy of signatures on the petition calling for organization of the Fire Protection District. He also contacted the County Clerk and local newspaper for proof of publication. When these sources failed to respond to his concern, he contacted the Attorney General's office. Mr. W spoke with the Minority Speaker of the House who also contacted the Attorney General's office concerning the election's validity.

Community meetings were held beginning in February of 1984, to discuss the alternatives to paying the additional ad valorem taxes which resulted from the creation of the Fire Protection District. Those opposing the Fire Protection District hired an attorney in April. In June, the opponents filed a petition with the Board of

---

**3.** Title 19 O.S.1981 § 901.1 provides:

"Whenever twenty-five percent (25%) of the holders of title to lands outside of the corporate limits of any incorporated city or town shall petition the Board of County Commissioners of the County in which such area owned by them is located for the formation of a Fire Protection District, and compliance had with the provisions of this act, the said Board of County Commissioners shall enter its order organizing such district, and when so organized such District shall have the powers conferred herein or such as hereafter may be conferred by law upon such Fire Protection Districts."

**4.** The Court of Appeals found that the required signatures had not been obtained. However, it remanded the cause only on the equity issue. On remand, the trial court did not allow evidence on the procurement of signatures on the petition. It found that if there was any defect, it was cured when the petition was presented to the County Commissioners without objection.

County Commissioners seeking to withdraw from the Fire Protection District pursuant to 19 O.S.1981 § 901.23.[5] In a letter dated July 29, 1984, the Board of County Commissioners denied the petition, because residents failed to show that the area did not benefit from inclusion within the Fire Protection District.

It is undisputed that the notice mandated by § 901.3 was not given, and that there was no publication in a newspaper of general circulation before the election. An article concerning the election did appear in the *Guthrie Daily Leader* on December 13, 1982—the day before the election. Advertisements for ballot bids and minutes of the Logan County Commission meetings were published. The date of the election was included in both the bid advertisement and the minutes which were published on October 21, November 10, 11, 12, and 18, 1982. Establishment of the Fire Protection District was discussed in a social calendar calling for attendance at a fund-raising dance. Members of the volunteer fire department passed out flyers on a house-to-house basis in the Fire Protection District, and these same flyers were sent home with children riding buses in the Fire Protection District.

Although it found that these publications were not in compliance with § 901.3, the trial court ruled in favor of the Fire Protection District on December 2, 1986. It found that the attempts at notice were in substantial compliance with the intent of the statute. The election was upheld on the basis that the contestants had failed to prove that the results of the election would have been altered had notice been given. This appeal, the contestants second attempt to protect their right to statutory notice, was filed on December 5, 1986.

5. Title 19 O.S.1981 § 901.23 provides in pertinent part:
"Any portion of the District which will not be benefited by remaining therein may be withdrawn from the District by the filing of a petition containing the names of more than fifty-one percent (51%) of the property owners within the portion sought to be withdrawn, requesting the withdrawal of such portion from the District on grounds that it will not be benefited by remaining therein...."

I

TITLE 19 O.S.1981 § 901.3 REQUIRES THAT AN ELECTION TO CREATE A FIRE PROTECTION DISTRICT BE PRECEDED BY PUBLICATION NOTICE FOR TWO WEEKS IN A NEWSPAPER OF GENERAL CIRCULATION IN THE TERRITORY COMPRISING THE PROPOSED DISTRICT.

The contestants assert that the election must be set aside because they were not given notice of the election. While recognizing that the statutorily required notice was not given, the Fire Protection District argues that, absent proof of fraud or corruption, the election results must stand.

The only "publicity" concerning the election which might conceivably constitute notice to the approximately three thousand voters in the Fire Protection District that their property taxes would be increased if the vote carried, appeared in the *Guthrie Daily Leader* on December 13, 1982—the day before the election. However, the timing of the article precludes its being considered as a substitute for the required notice. Because the Fire Protection District is located in a rural area, some residents do not receive their paper until the day following publication. Other information relating to the election may be found in advertisements for ballot bids, minutes of Logan County Commissioner meetings, and a social calendar calling for attendance at a fund-raising dance. The advertisements for bids and the publication of minutes were located in the classified portion of the paper. It would be incongruous to consider the advertisement for bids as a substitute for the required notice. If an

The Board of County Commissioners shall consider and pass upon all objections and if it find that the portion of the district sought to be withdrawn will not be benefited by remaining within the District and will not serve as a fire hazard to the remaining portion of the District, and that the territory remaining in the District will be benefited by continuing as a District then it shall grant the petition...."

interested property owner had stumbled over the Commissioner minutes, he/she would not necessarily understand that an election which would affect property rights was pending. The minutes gave only scant details of the proceedings at the meetings. Obviously, newspaper articles, comments, or similar publicity cannot lawfully substitute for the mandatory requirements of § 901.3.[6] Even if the Court were to adopt substantial compliance as a standard of review, the election would still be invalid.[7] *The record reflects that there was absolutely no compliance with the statutorily required notice.*

The Okla. Const., art. 3, § 4, vests the Oklahoma Legislature with the authority to prescribe the time and manner of holding all elections.[8] By enacting § 901.3, the Legislature has mandated that adequate notice constitutes two publications in a newspaper of general circulation. The language of § 901.3 is not ambiguous. It provides that the County Clerk "shall cause notice of the election to be given for two (2) weeks" in a newspaper of general circulation. The Legislature's use of the word "shall" connotes a mandatory duty equivalent to a command.[9] A plain reading of § 901.3 reveals a Legislative directive requiring notice of an election to create a fire protection district. Here, the notice required by § 901.3 was not given. Requiring anything less than strict compliance with the statutory requirements of § 901.3 results in overt judicial legislation.[10] We do not sit as a council of revision, empowered to rewrite legislation when the statute is free from ambiguity.[11]

An election to create a fire protection district is a special election. Notice requirements may be relaxed for general elections, because the public is presumed to know when they are held.[12] However, special elections are not set on a date certain. If notice is not given, voters may well be unaware that an election is being held at all,[13] and thus unable to express their sovereign will. The number of voters within the Fire Protection District is disputed with the alleged range being between two and three thousand. Because only 216 votes were cast,[14] an exact estimate is unnecessary—the best estimate is that 10% of the voters cast their ballots. It is obvious that notice of a special election is required to inform voters that an election will be held

6. *Special Tax School Dist. No. 1 v. State,* 123 So.2d 316, 322 (Fla.1960); *Ashcraft v. Estill County,* 290 S.W.2d 31, 33 (Ky.1956); *Wiggins v. Lopez,* 73 N.M. 224, 387 P.2d 330, 334 (1963). But see, *Long v. City of Olympia,* 72 Wash.2d 85, 431 P.2d 729, 733 (1967); *Dowsett v. City of E. Moline,* 8 Ill.2d 560, 134 N.E.2d 793, 798 (1956); *Eustace v. Speckhart,* 14 Or.App. 485, 514 P.2d 65, 67 (1973). In these cases, publicity was considered on the issue of notice. However, in each of the cases, there was some form of statutory notice.

7. Substantial compliance with a mandatory statute such as § 901.3 is not shown unless it appears that the purpose of the statute has been served by some other method. *Matter of Estate of Lahr,* 744 P.2d 1267, 1271 (Okla.1987).

8. Okla. Const. art. 3, § 4 provides:
"The Legislature shall prescribe the time and manner of holding and conducting all elections, and enact such laws as may be necessary to detect and punish fraud in such elections. The Legislature may provide by law for the registration of electors throughout the state and, when it is so provided, no person shall vote at any election unless he shall have registered according to law."

9. *Fuller v. Odom,* 741 P.2d 449, 453 (Okla.1987).

10. *American Legion Phillips Post v. City of Malden,* 330 S.W.2d 189, 192 (Mo.App.1959).

11. *Cooper v. Dix,* 771 P.2d 614, 617 (Okla.1989); *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988).

12. *State v. Whittle,* 401 S.W.2d 401, 404 (Mo. 1966); *Turner v. Lewie,* 201 S.W.2d 86, 88 (Tex. Civ.App.1947).

13. See, *Veterans' Finance Comm. v. Betts,* 11 Cal.Rptr. 103, 106, 55 Cal.2d 397, 359 P.2d 471, 474 (1961); *McNair v. Achord,* 215 Ga. 540, 111 S.E.2d 236, 238 (1959); Annot., "Notice of Election to Fill Vacancy in Office at General Election," 158 A.L.R. 1184–85 (1945). Although not specifically stated, this is the fair inference drawn from the language of these decisions. Harvard Law Review Assoc., *A Uniform System of Citation,* p. 8 (14th Ed.1987).

14. One hundred fifty-five were in favor of the fire district. Sixty-one were opposed.

and its purpose.[15]

■ Post-election contests considered by the courts of other jurisdictions support our finding that the election must be invalidated.[16] The electoral process fails and the right to vote is abridged if a person does not have prior notice that an election which affects his/her interests is to take place.[17] Voters may decide not to vote, but the right to exercise the right cannot be denied.

## II

## IN THE ABSENCE OF A STATUTORY REMEDY, EQUITY WILL INTERVENE TO CURE ELECTION DEFECTS.

■ The Fire Protection Act (the Act), 19 O.S.1981 § 901.1 et seq., outlines the procedures to follow in creating a fire protection district. Section 901.4 [18] provides that such elections are to be conducted in accordance with the general election laws. These laws are found in Title 26. Section 8–109 [19] proscribes contests in any election "except those in which candidates are seeking office." [20] This statute does not conflict with any provision of the Fire Protection District statutes. Its language is clear and unambiguous. Because the legislative intent is clearly expressed, it is unnecessary to apply rules of construction.[21] The clear language of § 8–109 prohibits contests in any election not involving the right to hold office. We may not fabricate a different meaning from the one expressed in § 8–109 in order to provide the contestants with a

---

**15.** *Webb v. Clatsop County School Dist.,* 188 Or. 324, 215 P.2d 368, 372 (1950).

**16.** *Solomon v. North Shore Sanitary Dist.,* 48 Ill.2d 309, 269 N.E.2d 457, 460 (1971); *Bouldin v. City of Homewood,* 277 Ala. 665, 174 So.2d 306, 313 (1965); *Veterans' Finance Comm. v. Betts,* see note 13, supra; *State ex rel. Stokes Mound School Dist. No. 7 v. Colliver,* 243 S.W.2d 344, 350 (Mo.1951); *City of Berkeley v. Holmes,* 358 Mo. 1237, 219 S.W.2d 650, 652 (1949). See also, *Morabito v. Hagerman Fire Dist.,* 128 Misc.2d 340, 489 N.Y.S.2d 989, 993 (1985). See also, Annot., "Statutory Provision as to Manner and Time of Notice of Special Election as Mandatory or Directory," 119 A.L.R. 661–62 (1939), stating that where, as here, the record is entirely void of the necessary publication notice, the election is invalid.

**17.** *Garcia v. Guerra,* 744 F.2d 1159, 1164 (5th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985); *Schooler v. Lisle,* 299 S.W.2d 792, 794 (Ky.1957). *Garcia* involved a determination of the right to attorneys' fees, the Fifth Circuit was faced with a determination of prevailing party status in an action to enjoin an election. In making its determination that the parties opposing the change of election date were prevailing parties, it analyzed the importance the right to vote presents. Relying on cases decided by the Supreme Court, the appellate court found that the right to vote is "abridged if a person does not have prior notice that an election is to take place." Here, an election was held without the statutorily required notice—the right to vote was abridged. *Schooler* involved a contested election of a public official. However, in invalidating the election, the Kentucky Court of Appeals recognized two important privileges of a democracy—the right to vote and the right to be elected. It found that the democratic process failed when the voice of the people was not heard. Failure to invalidate the special election at issue is an effective muzzle on the voice of residents affected by the increased tax. Although the facts in *Garcia* and *Schooler* do not parallel those presented, the nature of the right to vote is not changed.

**18.** Title 19 O.S.1981 § 901.4 provides in pertinent part:

"Such elections shall be conducted in accordance with the general election laws of the state and the regular election officials shall be in charge at the usual polling place of each regular precinct, or part of a precinct, which shall include lands within the boundaries of such proposed district ..."

**19.** Title 26 O.S.1981 § 8–109, see note 2, supra.

**20.** The issue relating to equitable relief for contesting an election in which there is no candidate will be statutorily addressed if a bill, recently introduced in the Legislature, is passed. Senate Bill 861 proposes a new law to be cited as the "Issue Election Contest Act." As written, the Act provides for contests of issue elections to be filed with the secretary of the county election board responsible for certifying the results of the election before 5 p.m. on Friday following an election conducted on Tuesday. The proposed Act encompasses all election questions, including bond issues, sales tax issues, and all other issues, voted upon by the voters of a county, municipality, school district, or other political subdivision. However, because the Bill is subject to the legislative process, it is necessary to address the issue of equitable relief.

**21.** *Fuller v. Odom,* see note 9, at 452; *Anschutz Corp. v. Sanders,* 734 P.2d 1290, 1292 (Okla. 1987).

remedy to address their wrong.[22] However, we are mindful of the importance of the right to be preserved—the right to vote.

Were we to stop with this analysis of § 8–109 the public would be left without an avenue to address wrongs which may occur in the conduct of special elections. We find instructive case law from other jurisdictions in which the courts have found that if no other remedy exists, equity will intervene.[23] Other courts allow equity proceedings if, as here, property rights are affected or taxes are to be imposed as a result of the election.[24] Almost an equal number of jurisdictions have found that courts of equity have no power to determine an election's validity.[25] The courts which allow the invocation of equity to protect against adverse consequences from invalid elections are more persuasive than those which ignore them. We find that if there is no statutory provision allowing an election contest involving civil or property rights rather than purely political rights,[26] the controversy may proceed in equity.

 Although we recognize that the right to contest an election may be lost by laches or inexcusable delay,[27] laches is not an appropriate defense to one who lacks

notice of a right to proceed or a cause of action.[28] Several of the contestants had no notice that there had been an election to contest until they received their tax statements in December of 1983—one year after the election. Six months later, Mr. W attempted to file a pro se petition to have the election set aside. Nine months later, they filed this cause to nullify the election. Only after investigation, did the contestants find that the election had not been advertised as required by § 901.3. On first inquiry, Mr. W was assured by County officials that the election had been properly advertised. When delay is caused by an adverse party, that party may not use the defense to his/her benefit.[29] Although there is no evidence that the Fire Protection District gave the contestants misleading information, there is evidence in the record that less than accurate information was given by County officials.

The plain language of § 901.3 requires advertisement of the election to form the Fire Protection District. Failure to follow that directive violated a legal duty. This is not a case where nothing was done until the action was filed. We fail to see how laches can apply when: 1) inquiries were made as soon as the contestants became

**22.** *Wade v. Brown,* 516 P.2d 526, 528 (Okla. 1973); *In re Guardianship of Campbell,* 450 P.2d 203, 205 (Okla.1966).

**23.** *Cook v. Hill,* 224 Or. 565, 356 P.2d 1067, 1069 (1960); *Patton v. Independent School Dist.,* 242 Iowa 941, 48 N.W.2d 803, 808 (1951); *Pierce v. Superior Court,* 1 Cal.2d 759, 37 P.2d 453, 455, 96 A.L.R. 1020 (1934); *Poe v. Sheridan County,* 52 Mont. 279, 157 P. 185, 187 (1916); *Ashley v. Richard,* 32 Idaho 551, 185 P. 1076, 1079 (1919); *In re Evans,* 227 N.J.Super. 339, 547 A.2d 344, 346 (1988); *Schieffelin v. Komfort,* 86 Misc. 678, 149 N.Y.S. 254, 257 (1914), *aff'd,* 163 A.D. 741, 149 N.Y.S. 65 (1914), *aff'd* 212 N.Y. 520, 106 N.E. 675 (1914).

**24.** *Dorf v. Skolnik,* 280 Md. 101, 371 A.2d 1094, 1100 (1977); *Kacoonis v. City of Mountain View,* 224 Ga. 151, 160 S.E.2d 364, 366 (1968); *Barger v. Ward,* 407 S.W.2d 397, 399 (Ky.1966); *City of Nameoki v. Granite City,* 408 Ill. 33, 95 N.E.2d 920–21 (1950); *Appalachian Elec. Power Co. v. Town of Galax,* 173 Va. 329, 4 S.E.2d 390, 392 (1939); *Jones v. Commissioners of Person,* 107 N.C. 248, 12 S.E. 69, 70 (1890).

**25.** *Curry v. Dawson,* 238 Ark. 310, 379 S.W.2d 287, 288–89 (1964); *Nichols v. Reorganized*

*School Dist. No. 1,* 364 S.W.2d 9, 13 (Mo.1963); *Griffin v. Buzard,* 86 Ariz. 166, 342 P.2d 201, 201–02 (1959); *Scully v. Town of Westport,* 145 Ct. 648, 145 A.2d 742, 746 (1958); *Stickney v. Town of Salem,* 96 N.H. 500, 78 A.2d 921, 921–22 (1951); *Flake v. Pretzel,* 381 Ill. 498, 46 N.E.2d 375, 377 (1943); *Swan v. Bowker,* 135 Neb. 405, 281 N.W. 891, 893 (1938); *State ex rel. Jackson County v. Waltner,* 340 Mo. 137, 100 S.W.2d 272, 275 (1936); *Ewing v. Harries,* 68 Utah 452, 250 P. 1049, 1050 (1926); *Brown v. Randolph County Court,* 45 W.Va. 827, 32 S.E. 165, 167 (1899).

**26.** See, *State ex rel. Cameron v. Jones,* 165 Okl. 193, 25 P.2d 648, 650 (1933).

**27.** *Wickersham v. State Elec. Bd.,* 357 P.2d 421, 424 (Okla.1960).

**28.** *Chisholm v. House,* 183 F.2d 698, 705–06 (10th Cir.1950); *Lawson v. Haynes,* 170 F.2d 741, 744 (10th Cir.1948).

**29.** *Nadel v. Zeligson,* 207 Okl. 658, 252 P.2d 140, 144 (1952).

aware of the additional tax; 2) local officials, elected state representatives, and the Attorney General were contacted in an attempt to obtain relief; and 3) an attempt was made to file a pro se action within six months of notice, and suit was filed within nine months of notice of the assessment.

## CONCLUSION

The plain language of 19 O.S.1981 § 901.3 requires that notice of an election to form a fire protection district be published for two weeks in a newspaper of general circulation in the territory comprising the proposed district. When the prescribed notice is not given, and there is no substantial compliance with the mandated statutory notice, the results of the special election must be invalidated.

Although there is no statutory precedure for redress for the failure to provide notice of an election to form a fire protection district, equity will intervene to protect the fundamental right to vote. Laches is not a defense to an election contest if affirmative steps are taken timely to set aside the election. Because the contestants were improperly informed concerning statutory notice on the first inquiry, and because affirmative steps were taken to have the Fire Protection District dissolved or the election set aside, laches is inapplicable.

REVERSED AND REMANDED.

OPALA, V.C.J., and HODGES, ALMA WILSON and SUMMERS, JJ., concur.

HARGRAVE, C.J., and LAVENDER, SIMMS and DOOLIN, JJ., dissent.

## DISSENTING OPINION

SIMMS, Justice, dissenting:

Today the majority encroaches upon the sanctity and finality of fairly-held elections. By holding that a registered voter can come into a district court over a year-and-a-half after an election and cause it to be invalidated even though no evidence of fraud or corruption exists and even though such actions are prohibited by statute (26 O.S.1981, § 8–109), the majority is in essence thwarting the vote of those who did vote in the election, rendering the sovereign will of the people meaningless, and disrupting the flow of governmental services to citizens. Therefore, I must respectfully dissent from the majority's decision.

### I.

The majority holds that the notice requirements of Section 901.3 must be strictly complied with in order to have a valid election. This pronouncement flies in the face of previous rulings of this Court which found substantial compliance with notice requirements to be sufficient in contests brought after the election. The majority makes no attempt to distinguish previous cases governing this issue nor give persuasive reasons why this long-standing law should be overruled. The established law as laid down by this Court is, for all practical purposes, ignored by the majority.

In *Gardner v. Scott*, 205 Okl. 333, 237 P.2d 863, 866 (1951), this Court applied the well-settled rule announced in *Town of Grove v. Haskell*, 24 Okl. 707, 104 P. 56 (1909),

"that all reasonable presumptions are in favor of the regularity of elections and that they are not to be held void unless clearly illegal; that statutory requirements are provided in order that elections may be lawfully and fairly held and that people entitled to participate therein may do so. The end to be accomplished in every case, not the means, is the chief purpose of the law. Elections are the ultimate expression of the sovereign will. When fairly expressed—that is, free from taint of fraud or charges of improper conduct—it is the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating to elections rather than defeat them by requiring a rigid conformity to law."

See also, *Wadsworth v. Neher*, 138 Okl. 4, 280 P. 263, 264 (1929); *McCarter v. Spears*, 157 Okl. 168, 11 P.2d 489, 491 (1932); *State ex rel. McNeill v. Long*, 178 Okl. 409, 63 P.2d 60, 62 (1936); *Hembree v. City of Stilwell*, Okl., 597 P.2d 1218, 1220 (1979);

*Quinn v. City of Tulsa,* Okl., 777 P.2d 1331, 1338 (1989).

*Gardner* also reaffirmed the earlier holding of *Lamb v. Palmer,* 79 Okl. 68, 191 P. 184 (1920), in which the Syllabus by the Court reads

"The general rule is, where the statute does not in express terms declare an election void for violation of certain statutory provisions, the election will be sustained, and the violation of the statute will be treated as an irregularity going to the form, instead of to the substance, where, from all the facts, the court concludes that, in spite of the departure from statutory requirements, a full and fair ballot has been cast, and a true and fair return of the entire election has been canvassed and made." 237 P.2d, at 866.

See also *McNeill,* supra; *Wallace v. Excise Board of Bryan County,* 91 Okl. 101, 216 P. 654, 656 (1923).

Title 19 O.S.1981, § 901.3 does not in its express terms declare the election void in the event the notice provisions contained therein are violated. Therefore, under the law of this state, the failure to comply with the provisions of Section 901.3 is to be considered an irregularity going to the form rather than the substance of the provisions since there was no showing that the election was unfair.

We have specifically held that statutory provisions fixing time and manner of giving notice of elections are mandatory and will be upheld strictly in a direct action brought PRIOR to the election. *State ex rel., McNeill v. Long,* 178 Okl. 409, 63 P.2d 60, 62 (1932). However, these same provisions are to be construed as merely directory when an action is instituted AFTER the election is held because an expression of the sovereign will has intervened. *Id.* Once this sovereign will is fairly expressed, the Court must sustain it by upholding the election in the absence of fraud or corruption. *McNeill,* supra;[1] *Hembree,* supra. See also *Cooper v. Dix,* Okl., 771 P.2d 614, 617 (1989); *Keltch v. Alfalfa County Election Bd.,* Okl., 737 P.2d 908, 911 (1987).

The majority, using the same pen, recently affirmed the principle that we are to indulge every presumption in favor of the validity of the election, and where possible, utilize a liberal rather than a narrow statutory construction to sustain the election's validity. *Cooper,* supra; *Keltch,* supra. Moreover, the majority's opinion in *Keltch* states

"An election not clearly illegal, will be upheld. No allegations of fraud or corruption have been made. As a general rule, if there are no such allegations and only statutory informalities are involved, the results of the election should not be invalidated. This rationale is premised primarily in the interest the electorate has in having its votes count and, secondarily, in the expense involved in conducting a second election. Just as there must be a point at which litigation must be determined to protect the rights of the respective litigants, so too, must there be a time when elections are determined to be final in order to protect the interests of the electorate—that time comes when an election can be determined with mathematical certainty." 737 P.2d, at 911.

Hence, the most recent rulings from this Court concerning the issues before us do not support the position that the majority takes.

This case was tried to the district court. Besides finding no proof of fraud, the trial court also found the following:

Notice of public hearing on organization of the Oak Cliff Fire Protection District was published in the Guthrie Daily

---

1. In *McNeill,* this Court affirmed the trial court's judgment for defendants in an election contest action on the grounds that, *inter alia,* the plaintiffs failed to prove that lack of compliance with statutory notice requirements had an impact on the election results and failed to prove the existence of any fraud in the conduct of the election. Therein, we held as follows:

"No fraud is alleged or proved in this action. No showing is made that the failure to give the full notice required by law operated in any manner to change the result of the election. * * * It does not appear that any effort was made on behalf of the proponents of the initiated measure to secure a postponement of the election in order that further notice could be given ..." 63 P.2d, at 63.

Leader. Notices of election were placed in public places by the Election Board as required by law. Flyers containing the date of the election were distributed in the area to be affected by the election. The date of the election was contained in publication of the notice for sealed bids concerning the ballots for the election. There was some media coverage of the proposed election. All witnesses stated that they would have read the notice of the election in one of the newspapers of general circulation or they would have been notified by friends who subscribed to one of the newspapers. However, none of the witnesses read any of the publications contained in the Defendants' [appellees'] exhibits.

Based upon these findings, the district court concluded that although there was not strict compliance with the statutory requirements of 19 O.S.1981, § 901.3, under all of the facts and circumstances there was *substantial compliance* with the statute. The trial court upheld the election because the appellants failed to show by a preponderance of the evidence that the election's outcome would have been different had notice of the election been published in a newspaper of general publication in the territory to be affected. The testimony given at trial clearly supports the trial court's conclusion, and there was competent evidence to fairly warrant the conclusion of the trial court. *Turlington v. Summers*, 162 Okl. 13, 18 P.2d 865, 867 (1933).

In addition to the court's findings of fact, testimony indicated that the election received media attention from local and statewide newspapers as well as one television station. Moreover, though the trial court did not consider it, testimony showed that flyers concerning the election were sent home with school children to give to their parents.

This Court held in *Gardner v. Scott*, 205 Okl. 333, 237 P.2d 863, 866 (1951), that "substantial compliance" with an election notification and declaration statute was all that was required. Furthermore, in *Ratliff*

*v. State ex rel., Woods*, 79 Okl. 152, 191 P. 1038, 1039, we stated:

"This court in a long line of cases has held that the notice in special elections is directory and not mandatory, and that a *substantial compliance* renders the election valid, and in the absence of allegations and proof that a sufficient number of voters were not notified of the election and did not actually participate therein to have changed the result, the election would not be held void." (Emphasis added)

In *Matter of Estate of Lahr*, Okl., 744 P.2d 1267, 1271 (1987), this Court held

"Substantial compliance with a statute is not shown unless it appears that the purpose of the statute has been served."

The clear purpose of Section 901.3 is to make the electorate aware of the upcoming election. Though appellees did not comply with the statute letter by letter, the record indicates that they substantially complied with the purpose of the statute and attempted to make those citizens affected by the fire protection district election aware that it was going to be held.

Furthermore, testimony by the secretary for the Logan County Election Board revealed that a similar special election, the Logan County Health Department mill levy election, was held eight months after the fire protection district election. She also stated that more voters were registered in the district for this second election, yet only forty-six voters from the precincts encompassing the Oak Cliff Fire Protection District voted in the second election. Of the thirty witnesses who testified at the election contest trial, only three voted in the Logan County Health Department mill levy election.

Using the two thousand registered voters figure, as the majority did, the turnout of voters for this second election computes as approximately 2.3%. How can the majority hold that an estimate of 10% of the registered voters actually casting a ballot in the fire protection district election evidences a lack of sufficient notice when these same precincts had a 2.3% turnout for another special election? If anything,

these figures evidence the typicality of poor turnouts by voters for special elections held in these particular precincts.

In *Quinn v. City of Tulsa*, Okl., 777 P.2d 1331, 1341 (1989), we declared:

"The power of the people to speak through their ballots is sacrosanct. No court should be permitted to declare an election void nor to enjoin the result mandated by that election unless a contestant can prove conclusively, by clear and convincing evidence that the result of that election would have been substantially different but for the unlawful acts of public officials."

See also *Town of Grove v. Haskell*, 24 Okl. 707, 104 P. 56, 59 (1909) (plaintiff in contest action has burden not only to prove irregularity in election but also that the irregularity resulted in *substantial prejudice*); *Ratliff v. State ex rel., Woods*, 79 Okl. 152, 191 P. 1038, 1039 (in absence of proof that a sufficient number of voters were not notified of election and did not actually participate so as to change the result, election will not be invalidated).

The record indicates that two hundred sixteen people voted in the election. One hundred fifty-five were for it and sixty-one were opposed to it. Thirty witnesses testified at trial that they did not vote in the election, did not have notice of the election, and would have voted in the election had they known about it. Adding these thirty "votes" to the sixty-one opposing the district makes ninety-one votes in opposition to the district's creation. Title 19 O.S.1981, § 901.4 requires a "YES" vote of three-fifths (or sixty percent) of the voters in order to create the district. Even with the addition of these other thirty votes, the question would pass by sixty-two percent. Consequently, the outcome would not change if the plaintiffs' and complaining witnesses' "votes" against the creation of the district were added to the results.

The majority cites to no Oklahoma case which supports the holding in Part I of their opinion, and relies on dicta found in cases from other jurisdictions as well as inapplicable annotations to support its holding. One such citation is to the annotation found at 119 A.L.R. 661. Therein, the writer refers to this court's holding in *McNeill*, and notes that the law in Oklahoma is that after the election is held, statutory and constitutional requirements as to notice are directory, unless the electorate is prevented from giving a free expression of will due to a failure to give notice. See: Annot., 119 A.L.R. 662, 668 (1939). Several other states have come to the same conclusion as a complete reading of the annotation shows. The plaintiffs have made no showing that a free expression of sovereign will was not accomplished by the election.

The majority also cites *Veterans' Finance Comm. v. Betts*, 11 Cal.Rptr. 103, 106, 55 Cal.2d 397, 359 P.2d 471, 474 (1961), *McNair v. Achord*, 215 Ga. 540, 111 S.E.2d 236, 238 (1959), and another annotation to support the statement that if the statutory notice is not given, then "voters may well be unaware that an election is being held at all." See footnote 13 of majority opinion. Nowhere in the cited cases is such a statement made and the annotation makes this statement on the grounds that notice of an election to fill a vacancy in public office is necessary because "the happening of a vacancy is unpredictable and uncertain." Annot., 158 A.L.R. 1185, 1185 (1945). In the case at bar, notice of a hearing on the petition for a fire protection district was clearly published to the letter of the law. Moreover, various forms of other notice were given concerning the election so that the election was not an "unpredictable" or "uncertain" occurrence.

II.

I agree with the majority's holding in Part II of its opinion to the extent that it finds that 26 O.S.1981, § 8–109 prohibits this election contest action. I further agree that because no statutory remedy exists to provide for contest actions for elections other than "those in which candidates are seeking office," we must look to equity for possible redress. However, I disagree with the majority's treatment of the equity issue. To say that this action, brought TWENTY (20) MONTHS after an election is not barred by the doctrine of

laches is clearly erroneous. Such a determination invariably violates the principle that this Court should indulge every presumption in favor of upholding an election. *Cooper,* supra; *Keltch,* supra; *City of Tecumseh v. City of Shawnee,* 148 Okl. 128, 297 P. 285, 294 (1931).

We held in *Wickersham v. State Election Board,* Okl., 357 P.2d 421, 424 (1960), that the right to contest an election may be lost by *laches* or *inexcusable delay.* See also *Martin v. McGarr,* 27 Okl. 653, 117 P. 323 (1910); 29 C.J.S. Elections, § 260, p. 372. Moreover, in *McNeill,* this Court, in affirming the trial court's judgment against the contestants, emphasized the fact that the election contestants did not bring their action until sixteen months after the election. See 63 P.2d, at 63. The delay in bringing the contest action weighed against the contestants in the Court's decision against them.

Appellants' delay of twenty months before bringing their election contest is *inexcusable,* especially since some of the plaintiffs and witnesses knew of the election well before the action was brought in August of 1984. Testimony by the plaintiffs' own witnesses suggested that some of the plaintiffs knew about the election the day it was held while others found out about within a week of its occurrence. One witness stated that she discussed the election with several of the plaintiffs at a neighborhood association meeting held in the Spring of 1983 shortly after the election. Further testimony by the secretary of the Logan County Election Board indicated that many of the plaintiffs came to the Election Board offices inquiring as to the election as early as December of 1982 and the Spring of 1983. The evidence at trial supports a finding that the plaintiffs were aware of the election at least a year-and-a-half before they filed the election contest action.

The majority finds that the contestants did not become aware of the election until December of 1983 when they received their tax assessments. Even assuming, *arguendo,* that this were true, the contest was not instituted until eight months later. It is acknowledged that phone calls and visits were made to officials about the election and the district. However, these contacts were late in coming and do not bar the application of the doctrine of laches. During the delay, the fire protection district not only incurred debts and purchased equipment, but also began operating under authority of law and in plain view of appellants. Many government officials and employees relied on the election result and acted in accordance with the majority vote for several months before any opposition was forthcoming. These officials and governmental entities must be able to depend upon the finality of elections because they exist by reason of the sovereign will of the people of the district which grants them the right to incur debts, buy equipment and make decisions affecting fire protection in the area.

Additionally, the district officials sent letters containing information about the fire protection district created by the election to the homes within the district about a month after the election. Therefore, the plaintiffs were obviously aware that an election had been held long before their contest action was filed, another factor which militates in favor of the laches bar against contestants.

Important questions are inherent in the case at bar. For instance, what will become of the debts incurred, equipment purchased and fire stations built by the fire protection district if the election is overturned? How do the people and the governmental entities deal with the purchases, encumbrances and obligations of an entity that no longer exists? The majority's holding does not take such essential considerations into account.

For these reasons, I would affirm the trial court and uphold the free expression of the sovereign will of the people.

I am authorized to state that Justice LAVENDER and Justice DOOLIN join with me in this Dissenting Opinion.